[Cite as *State v. Spirnak*, 2020-Ohio-6838.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-261 |
| v. | : | (C.P.C. No. 18CR-3866) |
| Richard M. Spirnak, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 22, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Anzelmo Law*, and *James A. Anzelmo*, for appellant. **Argued:** *James A. Anzelmo.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Richard M. Spirnak, appeals from a judgment of the Franklin County Court of Common Pleas in which appellant was found guilty of one count of murder in violation of R.C. 2903.02, and one count of felony murder in violation of R.C. 2903.02. The trial court merged the two counts and appellant was sentenced on the second count to a term of 15 years to life to be served at the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm the judgment of the common pleas court.

**I. Facts and Procedural History**

{¶ 2} Appellant's conviction arose out of an incident which occurred on July 23, 2018 at the bus stop located on the southwest corner of Main Street and James Road in Franklin County, Ohio. Appellant was in a fight with Brandon Nicholson who suffered a

coma and died seven days later. Appellant was indicted on one count of murder in violation of R.C. 2903.02, and one count of felony murder in violation of R.C. 2903.02, alleging appellant caused Nicholson's death as the proximate result of felonious assault.

{¶ 3} The trial court held a jury trial. At trial, the first person to testify was Anthony Leonard who was delivering pizzas for a nearby shop when he was driving eastbound on Main Street and was stopped at the traffic light at Main Street and James Road. He saw two men "grappling" then exchanging blows or punches at the bus stop. (Tr. Vol. I at 210.) Leonard saw Nicholson grab appellant's shirt, but appellant seemed to have a "smirk" on his face. (Tr. Vol. I at 234.) Leonard thought the fight appeared to be a mutual fight but called 9-1-1. Officer Nathan Schwartz responded to the 9-1-1 call around 7:00 p.m., but both men told Officer Schwartz they did not need help. Officer Schwartz then left the scene.

{¶ 4} Amara Logan testified that she was staying at the nearby hotel with appellant. She and her daughter had taken the bus to Kroger and returned to that bus stop. She testified that when sober, appellant was mild tempered, but when he was drinking, he was "kind of quick tempered." (Tr. Vol. II at 296.) He also was more emotionally stable when taking his medication, but he had not been taking it recently. Logan testified appellant had previously been violent with her when he was intoxicated.

{¶ 5} Logan explained that when she and her daughter exited the bus, there were several men at the bus stop who had been drinking. Appellant approached her, and she asked him why he was not wearing a shirt but wearing a green jacket. Appellant told her it was Nicholson's jacket and that is when Logan saw Nicholson sitting in the bus stop shelter propped up against the glass enclosure. Logan testified that Nicholson, appellant, Thomas and Anthony Green had been drinking and she thought Nicholson looked intoxicated, had a laceration on his head and did not look good. Appellant told Logan that he had been in an altercation with Nicholson because Nicholson had "pick[ed] with [Green]" and used racial slurs. (Tr. Vol. II at 317.) Logan testified appellant told her that Nicholson attacked him, and he was defending himself and Green. Logan believed Nicholson needed help but appellant and Green kept telling her not to call anyone because Nicholson was fine. Logan had her phone in her hand, but appellant put his hand on her wrist and told her not to call anyone because it was not "that big of a deal," they had "just got into it" and Nicholson was fine. (Tr. Vol. II at 369-70.)

{¶ 6} Logan continued and explained that appellant poured a bottle of water on Nicholson's head and Nicholson sat up, gasped, coughed and vomited and it looked like "black tar." (Tr. Vol. II at 321.) Appellant told Logan that Nicholson was fine, but appellant had "knocked [Nicholson] out four times." (Tr. Vol. II at 321.) Appellant also demonstrated to Logan that, before she arrived, he had put Nicholson's head in a puddle behind the bus stop shelter. Later, Logan clarified that appellant stated he put Nicholson's face in the puddle and tried to drown him. Logan kept questioning whether Nicholson needed medical attention and appellant told her, "you're lucky that wasn't you," threw a beer can at Nicholson and it spilled on Logan and her daughter. (Tr. Vol. II at 323.) Logan stated appellant walked over and put his knee on Nicholson and Nicholson's head hit the glass of the shelter.

{¶ 7} Logan testified she was telling appellant to stop because the fight was over and then she returned to her hotel room. Appellant followed her. Logan told appellant she did not want Nicholson's jacket in the hotel room, and she took it to the dumpster. Appellant was mad and Logan thought he acted like the jacket was a souvenir. Logan testified that while in the hotel room, she kept asking appellant why he was involved in the fight and appellant replied that he was defending himself and Green; Nicholson was a bully, and he "deserved what he got." (Tr. Vol. II at 330.) Appellant kept telling Logan to mind her own business and she was lucky it was not her. Later that evening, appellant hit Logan in the face because he was mad at her. Logan testified that Thomas stayed in the room all night and Thomas and appellant continued drinking and joking about the fight. Appellant was "pretty drunk." (Tr. Vol. II at 349.) Appellant did not express remorse that night.

{¶ 8} Logan continued and testified that a few days later, she would not allow appellant to stay in her room anymore and he "messed my door up." (Tr. Vol. II at 350.) The door was jammed, and she and her daughter were locked in the room for approximately three hours until the hotel manager cut the door down. She was asked to leave the hotel because of the incident. When appellant discovered that Nicholson was in the hospital, Logan testified that appellant expressed remorse, stated he did not mean to do that and wanted to visit Nicholson in the hospital. Appellant cried when he learned that Nicholson had died.

{¶ 9} On cross-examination, Logan stated that appellant and the others told her that Nicholson was a bully, he instigated fights and he used racial slurs. She was told that Nicholson used racial slurs against Green, one of the men drinking there that day. She explained that during the altercation, the men were in the street and appellant's shirt was "ripped off." (Tr. Vol. II at 402.) When appellant poured the water on Nicholson's head he was trying to "revive" him because Logan was "freaking out." (Tr. Vol. II at 405.) Logan stated that appellant was intoxicated at the time he told her he knocked Nicholson out four times because he kept getting up, but she admitted appellant may have exaggerated. Logan stated that, besides her, no one thought anything was seriously wrong with Nicholson, they just thought he was unconscious and intoxicated. Appellant did express remorse and stated he did not intend for Nicholson to die and he was upset and crying over his death.

{¶ 10} Columbus Police Officer Wendell Tolber testified that he knew Nicholson as an individual in the area who enjoyed his beer. He had approximately 30-40 interactions with Nicholson that were all positive and he described Nicholson as an individual who always had a good word for others, or a good smile. Officer Tolber never gave Nicholson any warnings or had to enforce the law against him. He believed Nicholson had a reputation for peacefulness and had never known him to be a racist. Officer Tolber investigated the incident on his own because he liked and respected Nicholson. His investigation led to appellant. Officer Tolber did not think that Nicholson acted differently around him simply because he was a police officer but admitted it was possible.

{¶ 11} Columbus Police Officer Joseph Valiski responded to a call around 8:20 p.m. to a fight at the bus stop. He found a white male on the ground against the west side of the bus stop enclosure and "completely out." (Tr. Vol. II at 494.) Officer Valiski summoned a medic and started canvassing the area for witnesses.

{¶ 12} The coroner, Dr. John Daniels, testified regarding the autopsy he conducted on Nicholson on August 1, 2018. The date of his death was July 30, 2018. Nicholson had been in a deep coma in the hospital and had a severe traumatic brain injury. The coroner observed that his injuries were consistent with multiple blunt force traumas, not a one-time hit. The coroner stated the cause of death was multiple blunt force injuries to the head. The coroner determined the death was a homicide, or a death caused by the action of another.

{¶ 13} The jury found appellant guilty on both counts on February 7, 2019. On April 1, 2019, the trial court merged the two counts and sentenced appellant to a term of 15 years to life to be served at ODRC on Count 2. On April 9, 2019, the trial court held a miscellaneous hearing where appellant gave the trial judge a pro se motion for a new trial pursuant to Crim.R. 33. The motion was filed on April 16, 2019. The trial court did not expressly rule on the motion.[1] Appellant filed a timely notice of appeal on April 24, 2019.

## II. Assignments of Error

{¶ 14} Appellant appeals and assigns the following seven assignments of error for our review:

> [I.] There is insufficient evidence behind the jury finding that Spirnak is guilty of murder and felony murder, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Section 1 & 16, Article I of the Ohio Constitution.
>
> [II.] The jury finding Spirnak guilty of murder and felony murder is against the manifest weight of the evidence in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Section 1 & 16, Article I of the Ohio Constitution.
>
> [III.] The trial court erred by admitting into evidence prior bad acts of Spirnak, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section Sixteen, Article One of the Ohio Constitution.
>
> [IV.] The trial court erred by barring Spirnak from introducing evidence material to his defense, in violation of his rights to due process, under the Fifth and Fourteenth Amendments to the United States Constitution and Section 1

---

[1] Crim.R. 33(B) requires, with certain exceptions for being unavoidably prevented from filing and for newly discovered evidence, that a motion for new trial be filed within 14 days after the verdict was rendered. Here, the verdict was rendered on February 7, 2019. Fourteen days after the verdict was rendered was February 21, 2019. Appellant filed his motion well after this deadline. Appellant also filed his motion after the trial court had sentenced appellant and rendered its final judgment. Appellant alleged four claims in his motion for new trial: (1) trial counsel's lack of attentiveness, (2) the state's use of 9-1-1 call and trial court not permitting recross-examination, (3) prosecutorial misconduct, and (4) being shackled during trial. In support of his first claim, appellant asserted new trial was warranted on grounds of an irregularity in the proceeding; however, appellant did not assert any specific grounds for new trial in support of his remaining claims. He did not allege unavoidable prevention or newly discovered evidence. The record does not reflect that the trial court ruled on the motion. Nevertheless, as the motion was untimely filed and filed after the trial court rendered final judgment, we proceed with this appeal.

& 16, Article I of the Ohio Constitution, and his right to a fair trial, as guaranteed by the Sixth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

[V.] The trial court erred by not permitting Spirnak the right of recross examination, in violation of Spirnak's Sixth Amendments rights.

[VI.] The trial court erred by instructing the jury that it could consider flight as evidence of a consciousness of guilt.

[VII.] The trial court erred by not instructing the jury on the lesser included offenses of involuntary manslaughter and reckless homicide.

## III. Analysis

{¶ 15} For ease of discussion, we will address appellant's first and second assignments of error last. Thus, we begin our discussion with the third assignment of error.

### A. Third Assignment of Error – Evidence of prior bad acts

{¶ 16} In his third assignment of error, appellant contends the trial court erred by admitting into evidence his prior bad acts, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16, of the Ohio Constitution. " 'The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion.' " *State v. Hurse*, 10th Dist. No. 14AP-687, 2015-Ohio-2656, ¶ 8, quoting *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299 (1992). "Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, *State v. Beavers*, 10th Dist. No. 11AP-1064, 2012-Ohio-3654, ¶ 8, we note that no court has the authority, within its discretion, to commit an error of law. *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70." *State v. Chandler*, 10th Dist. No. 13AP-452, 2013-Ohio-4671, ¶ 8.

{¶ 17} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 18} In *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, and *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, the Supreme Court of Ohio set forth a three-step analysis for a trial court to conduct in determining the admissibility of other-acts evidence:

> The court must consider (1) whether the other-acts evidence is relevant under Evid.R. 401, i.e., whether it tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence, (2) whether the evidence is presented to prove a person's character to show conduct in conformity therewith, or whether it is presented for a legitimate other purpose, and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, Evid.R. 403. However, "the rule affords broad discretion to the trial judge regarding the admission of other acts evidence." [*Williams*] at ¶ 17.

*Tench* at ¶ 139, citing *Williams* at ¶ 20.

{¶ 19} The Supreme Court also stated in *Tench*: " '[e]rror in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction.' " *Id.* at ¶ 177, quoting *State v. Lytle*, 48 Ohio St.2d 391 (1976), paragraph three of the syllabus, *vacated in part on other grounds*, 438 U.S. 910 (1978). " '[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming.' " *Id.* at ¶ 177, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 32. Furthermore, the Supreme Court and this court have stated that limiting instructions, which the jury is presumed to follow, reduce the chance that a defendant was materially prejudiced by the admission of testimony, even if improper. *State v. Peterson*, 10th Dist. No. 12AP-646, 2013-Ohio-1807, ¶ 23, citing *Williams* at ¶ 24 (a limiting instruction lessens prejudicial effect of other-acts evidence); *State v. Bey*, 85 Ohio St.3d 487, 491 (1999).

{¶ 20} Appellant contends that evidence regarding his other acts of aggression was improperly admitted into evidence. While appellant did not specify which instances that he believes were improperly admitted within this argument, his statement of the case and facts discusses three instances.[2] The first instance is, as follows:

Q. He was mad at you for going to Michigan?

---

[2] App.R. 16 and 12 require appellant to make separate arguments and include citations to the record.

A. Yeah. Um-hmm.

\* \* \*

THE COURT: Well, okay. She -- it was her observation that he was mad?

THE WITNESS: No, because later on in the hotel room, he hit me in the face because of that reason in the same night that [Nicholson] had that altercation and he said that -- when he did it, he said that he -- he needed to get that over with, and once he did it then --

[DEFENSE COUNSEL]: Objection. That has nothing to do with this murder case.

THE COURT: Okay. Ladies and gentlemen, I'm going to permit the testimony. You're only to consider about -- what the transaction was between them, it has nothing to do with what happened out at the scene. You're not to say -- to take it as an incident of guilt, but strictly for the state of mind.

(Tr. Vol. II at 332-33.)

{¶ 21} After a lengthy sidebar discussion, the trial court instructed the jury, as follows:

Thank you. Thank you, ladies and gentlemen. You're to disregard anything about the strike on her. You're not to take it for any purpose. Okay? You may proceed.

(Tr. Vol. II at 343.)

{¶ 22} The trial court directed the jury to disregard the testimony regarding the strike to Logan's face. An appellate court presumes the jury follows the trial court's instructions. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 190. Therefore, we do not find any reversible error.

{¶ 23} The second instance appellant raises in his statement of the case and facts involves Logan's testimony regarding appellant staying in her hotel room:

A. So I let him come and stay anyway. And Thomas -- I didn't even -- I didn't even want anybody else at my place because I have a daughter, so it's like I don't even want any other guys there besides Rich because she knows Rich and when I told him I didn't want Thomas there, he's like, chill, he's my friend, he's not what you think and he kept telling me all these

explanations of why Thomas should stay and then -- so I couldn't really tell him to leave because it would have just been an altercation or an argument or something. I don't know what he would have did. I mean, usually if I would have locked him out, he would have got angry because I'd locked him out a couple days prior -- I mean, after the altercation, he messed my door up and we had got locked in the door for three or four hours and they had to come cut our door down.

THE COURT:  Okay.

[DEFENSE COUNSEL]:  Objection; relevance.

THE COURT:  I agree.  Sustained.  Ladies and gentlemen, let's get it back to where we were. You can consider not the acts that she described for your purposes, but what her viewpoint was.

(Tr. Vol. II at 346-47.)

{¶ 24}  Again, the trial court provided a limiting instruction to the jury.[3]  We do not find any reversible error.

{¶ 25}  The final instance appellant references in his statement of the case and facts is again during Logan's testimony:

Q.  You go to the Family Center.

A.  Yeah, so, well --

Q.  After you left the Groves Road --

A.  When we were at the hotel on Groves Road, Rich got kicked out from over there as well --

Q.  Okay.

A.  --because he got in an altercation with somebody across the street.

Q.  Okay.  And then what happened?

[DEFENSE COUNSEL]:  Objection; relevance.

---

[3] We note the objection was not based on improper other acts testimony, but the trial court sustained it on other grounds and provided a limiting instruction.

> THE COURT: Ladies and gentlemen, disregard the other altercation. It's really not relevant to this.
>
> [PROSECUTOR]: Well, Your Honor, there is a question of what's going on with her and Rich during this time and why she does what she does and that's why -- that's why we're going through that.
>
> THE COURT: Okay. They may only consider it for that direct purpose.

(Tr. Vol. II at 354-55.)

{¶ 26} The trial court provided a limiting instruction and directed the jury to disregard the other altercation. Again, the jury is presumed to follow the trial court's instructions. *McKelton* at ¶ 190. We find no reversible error and appellant's third assignment of error is overruled.

### B. Fourth Assignment of Error – Exclusion of evidence

{¶ 27} In his fourth assignment of error, appellant contends the trial court erred by barring him from introducing evidence material to his defense in violation of his Constitutional right to due process, and his right to a fair trial. Appellant contends the trial court improperly excluded evidence that Green told police that Nicholson instigated the fight with appellant. Appellant argues that evidence was material to his defense because such evidence rebutted claims that Nicholson had a reputation for peacefulness. Thus, appellant contends that under *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), a defendant has a constitutional right to defend against the prosecution's accusations and, thus, the trial court erred in excluding the evidence. Further, appellant argues the testimony was admissible under *State v. Blevins*, 36 Ohio App.3d 147, 148 (10th Dist.1987), as a statement made to police in the course of a police investigation.

{¶ 28} During cross-examination of Columbus Police Officer Deryl Kowalski, defense counsel asked Detective Kowalski if he had interviewed an African-American man named Green. Detective Kowalski believed Green was a witness to the altercation. During a sidebar conversation, defense counsel indicated that he wanted to ask Detective Kowalski about the progression of the fight and the fact that Green told the detective that Nicholson started the fight. Green was unavailable because no one could find him. The trial court excluded any testimony regarding what Green said based on hearsay.

{¶ 29} As stated, the trial court has broad discretion in the admission or exclusion of evidence. Evid.R. 801(C) defines "[h]earsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 provides that hearsay is inadmissible unless it falls within an exception. This testimony did not fit within an exception. Defense counsel attempted to argue the statement was not offered for the truth of the matter but to indicate what police did as a result. However, the detective had already testified he interviewed Green, wrote a summary and did nothing further because he was not the detective in charge of the investigation.

{¶ 30} In *Blevins*, this court recognized that not all out-of-court statements are hearsay. This court stated: "Some statements are merely verbal parts of acts and are, as the acts are themselves, admissible. * * * For example, where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay." *Id.* at 149. Further, to prevent abuse, this court stated that certain conditions should be met before the court admits statements which explain an officer's conduct during the course of a criminal investigation, such conditions are that the "conduct to be explained should be relevant, equivocal and contemporaneous with the statements" and the statements "must meet the standard of Evid.R. 403(A)." *Id.* However, since Detective Kowalski did nothing further after taking pictures and conducting the interview, any statements Green made to Detective Kowalski do not meet the *Blevins* standards. The trial court did not abuse its discretion in excluding any statements Green made to Detective Kowalski as hearsay. Appellant's fourth assignment of error is overruled.

### C. Fifth Assignment of Error – Recross-examination

{¶ 31} In his fifth assignment of error, appellant contends the trial court erred by not permitting him the right of recross-examination in violation of his Sixth Amendment rights. This trial court informed counsel it has a general rule prohibiting recross-examination in his courtroom. Appellant argues that the trial court's general policy against recross-examination foreclosed appellant from seeking to recross-examine witnesses when necessary and infringed on his Sixth Amendment rights.

{¶ 32} During a sidebar conversation, the trial court informed defense counsel of the rule. The parties agreed that the only new information on redirect was information

regarding appellant throwing the beer can.  Defense counsel admitted he was not going to mention the beer can incident and stated:

> [DEFENSE COUSNEL]: I'm not -- I'm not going to talk about the beer can.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: So...
>
> THE COURT: And I haven't heard anything else that hasn't been inside your cross."
>
> * * *
>
> THE COURT: And sometimes people get -- say, well, you -- I'm -- I have a constitutional right to recross * * *.  Okay?
>
> [DEFENSE COUNSEL]: I'm --
>
> THE COURT: That's just one of my pet peeves.  Recross ends up being the same cross again just at a different time.
>
> [DEFENSE COUNSEL]: I noticed that earlier. I'm not -- not going to make an issue out of it.

(Tr. Vol. II at 434-35.)

{¶ 33} In *State v. Faulkner*, 56 Ohio St.2d 42, 46 (1978), the Supreme Court stated "[a]lthough a defendant must have the opportunity to cross-examine all witnesses against him as a matter of right, * * * the opportunity to recross-examine a witness is within the discretion of the trial court. * * * Only where the prosecution inquires into new areas during redirect examination must the trial court allow defense the opportunity to recross-examine."  An alleged violation of confrontation rights is subject to harmless-error analysis. *State v. Smith*, 10th Dist. No. 06AP-1165, 2007-Ohio-6772, ¶ 23, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 31, citing *Delaware v. Van Arsdall*, 475 U.S. 673, 682 (1986).

{¶ 34} In this case, appellant fails to argue any other instances of an attempt to conduct recross-examination.  The only discussion during the trial was quoted above. Defense counsel did not object or provide any indication of any questions or topics where recross-examination was necessary.  Even assuming that some of the questions during the

state's redirect examination elicited a new matter, we believe appellant's counsel waived the issue and we are not convinced that appellant was prejudiced from any such questions, or that the outcome of the trial would have been different had the court allowed recross-examination on these matters. On appeal, appellant fails to argue any specific instances of prejudice resulting from the trial court's policy. Thus, appellant's fifth assignment of error is overruled.

### D. Sixth Assignment of Error – Jury instructions

{¶ 35} In his sixth assignment of error, appellant contends the trial court erred by instructing the jury that it could consider flight as evidence of a consciousness of guilt. The state argues appellant did not preserve this issue for review because he did not object to the instructions after the instruction was given but before the jury retired, and that appellant's objection before the instructions were given to the jury is insufficient to preserve the issue for review. The state cites *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 164 for this proposition. In *Phillips*, this court stated: "Pursuant to Crim.R. 30(A), an objection to a jury instruction should be made after the instruction is given but before the jury retires."

{¶ 36} However, Crim.R. 30(A) provides, in part, that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Accordingly, where no objection to jury instructions has been lodged, an appellate court undertakes a plain error analysis of the instructions because the defendant waives all but plain error. *State v. Graggs*, 10th Dist. No. 09AP-339, 2009-Ohio-5975, ¶ 30, citing *State v. Long*, 53 Ohio St.2d 91 (1978). However, the Supreme Court has determined that "a party does not waive objections to the trial court's charge by failing to formally object where: (1) the record affirmatively shows the trial court has been fully apprised of the correct law governing a material issue in dispute; and (2) the requesting party has been unsuccessful in obtaining the inclusion of that law in the charge to the jury." *State v. Butler*, 10th Dist. No. 98AP-55 (Oct. 22, 1998), citing *State v. Wolons*, 44 Ohio St.3d 64 (1989), paragraph one of the syllabus.

{¶ 37} In *Wolons*, the defendant's counsel and the trial court had an extensive discussion of the cases relevant to the issue of whether the trial court should give the

requested jury instruction. The defendant attempted to persuade the court that the evidence and cases supported his position, and it is clear the trial court understood his objection to the court's refusal to so instruct. The Supreme Court held that the defendant did not waive his objection by failing to object, on the record, at the end of his discussion with the trial court.

{¶ 38} In this case, the parties and the trial judge spent a significant amount of time discussing the jury instructions. Appellant's counsel objected to the flight instruction and the applicable law was discussed. At the end of the discussion, the trial court overruled appellant's objection and determined that the instruction as to flight would remain in the instructions. Thus, a discussion of the applicable law occurred, appellant's counsel did object and the trial court overruled the objection. We find appellant preserved his objection despite not objecting again after the jury was instructed but before it retired.

{¶ 39} In reviewing a trial court's jury instructions, ordinarily, " 'the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction or giving an instruction constituted an abuse of discretion under the facts and circumstances of the case.' " *State v. A.W.M.*, 10th Dist. No. 18AP-523, 2020-Ohio-4707, ¶ 49, quoting *State v. Williams*, 8th Dist. No. 90845, 2009-Ohio-2026, ¶ 50, citing *Wolons* at 68. We are mindful that " '[i]n examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole.' " *State v. Rutledge*, 10th Dist. No. 17AP-590, 2019-Ohio-3460, ¶ 31, quoting *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995).

{¶ 40} The Supreme Court has upheld the use of an instruction on consciousness of guilt. *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997). Further, the instruction in this case was taken from a template using Ohio Jury Instructions.[4] In *State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 12, this court stated it is significant when the jury instructions are

---

[4] *Ohio Jury Instructions*, 409.13 provides: "1. CONSCIOUSNESS OF GUILT. Testimony has been admitted indicating that the defendant (fled the [scene] [*describe jurisdiction*]) (escaped from custody) (resisted arrest) (falsified his/her identity) (changed appearance) (intimidated a witness) (attempted to conceal a crime) (*describe other conduct*). You are instructed that (*describe defendant's conduct*) alone does not raise a presumption of guilt, but it may tend to indicate the defendant's (consciousness) (awareness) of guilt. If you find that the facts do not support that the defendant (*describe defendant's conduct*), or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by (a consciousness) (an awareness) of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crime(s) charged. You alone will determine what weight, if any, to give to this evidence." (Emphasis sic.)

consistent with the language from the Ohio Jury Instructions ("Although we are cognizant that the Ohio Jury Instructions are not binding legal authority, it is significant that the trial court's instructions here are also consistent with the language from the Ohio Jury Instructions."). *See also State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 97 (Lanzinger, J., dissenting) (although the Ohio Jury Instructions are not binding legal authority, they are, nonetheless, helpful as an example of the generally accepted interpretation of Ohio statutes).

{¶ 41} In this case, the trial court instructed the jury, in pertinent part, as follows:

> Testimony has been admitted indicating that the defendant left the scene of the homicide. You are instructed that defendant leaving the scene alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant left the scene of the homicide, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by a consciousness of guilt, you may, but are not required to, consider the evidence in deciding whether the defendant is guilty of the crimes. You alone will determine what weight, if any, to give to this evidence.

(Jury Instructions at 4-5.)

{¶ 42} In this case, the evidence demonstrated appellant left the scene and returned to Logan's hotel room. He did not call for an ambulance and discouraged Logan from doing so. Thus, the jury instruction was a correct statement of law as applied to the facts of this case. Moreover, the instructions directed the jury that it could not infer appellant's guilt from the fact that he left the scene. The trial court did not abuse its discretion in providing the instruction and appellant's sixth assignment of error is overruled.

**E. Seventh Assignment of Error – Lesser included offenses**

{¶ 43} In his seventh assignment of error, appellant contends the trial court erred by not instructing the jury on the lesser included offenses of involuntary manslaughter and reckless homicide.[5]

{¶ 44} The state again argues this issue was not preserved for review because appellant did not object after the jury was given the instructions but before it retired for deliberations. However, during the lengthy discussion regarding jury instructions, appellant's counsel specifically objected and the trial judge noted the objection. As we discussed in appellant's sixth assignment of error, where (1) the record affirmatively shows the trial court has been fully apprised of the correct law governing a material issue in dispute, and (2) the requesting party has been unsuccessful in obtaining the inclusion of that law in the charge to the jury, a failure to object again after the jury was instructed but before deliberations, preserves the objection for review. *Wolons* at paragraph one of the syllabus.

{¶ 45} In *State v. Owens*, ___ Ohio St.3d ___, 2020-Ohio-4616, ¶ 8, the Supreme Court stated that "[a] criminal defendant is sometimes entitled to a jury instruction that allows the jury to consider convicting the defendant of a lesser included offense as an alternative to convicting for the offense for which the defendant was charged." *Id.*, citing *State v. Thomas*, 40 Ohio St.3d 213, 216-18 (1988). A defendant in a criminal case is entitled to have the law stated correctly by the trial court, but not to have his proposed jury instructions given to the jury. *State v. Boyde*, 10th Dist. No. 12AP-981, 2013-Ohio-3795, ¶ 12, citing *Columbus v. Harbuck*, 10th Dist. No. 99AP-1420 (Nov. 30, 2000), citing *State*

---

[5] The transcript reveals appellant's trial counsel addressing the court on the issue of lesser included offenses as follows:

> [DEFENSE COUNSEL]: * * * [I]n the alternative I've argued for a lesser-included offense of involuntary manslaughter based upon the misdemeanor reckless assault. I've argued for a lesser-included--and I think that applies as to Count Two. All right?
>
> And I've argued for a lesser-included offense of reckless homicide which I think would be a lesser-included offense as to Count One. Right?
>
> And then I've argued here as well, in the alternative, that an involuntary manslaughter based upon felonious assault would even be appropriate I think legally as a lesser-included offense as to Count Two.

(Tr. Vol. III at 668.)

*v. Snowden*, 7 Ohio App.3d 358, 363 (10th Dist.1982).  Where requested jury instructions are correct statements of the law as applied to the facts of the case, they should generally be given.  *Snowden* at 363.

{¶ 46}  An offense is a lesser included offense when "the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed."  *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 26.  In order to make this assessment, a court compares the elements of each crime.  *Id.* at ¶ 14.  A charge on a lesser included offense is required " 'only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense.' "  *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 192, quoting *Thomas* at paragraph two of the syllabus.

{¶ 47}  In *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 6, the Supreme Court stated:

> The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second tier looks to the evidence in a particular case and determines whether " 'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.' " *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11.

{¶ 48}  During the second tier of the analysis, the facts of a particular case become relevant.  *Id.*  However, an instruction is not warranted simply because the defendant offers some evidence going to the lesser included offense.  *State v. Shane*, 63 Ohio St.3d 630, 632-33 (1992).  Instead, there must be sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense.  *Id.*

### 1. Lesser included offense analysis as to Count 1

{¶ 49}  The indictment charged appellant with murder in Count 1.  With regard to Count 1, appellant requested the jury be instructed with the lesser included offense of

reckless homicide. Appellant argued the instruction was appropriate on grounds that the evidence fails to show that he murdered Nicholson by purposely killing him.

{¶ 50} A person commits murder when he purposefully causes the death of another. R.C. 2903.02(A). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). The offense of reckless homicide provides that "[n]o person shall recklessly cause the death of another." R.C. 2903.041(A). "A person acts recklessly 'when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result' " or is likely to be of a certain nature. *State v. Peck*, 10th Dist. No. 06AP-500, 2007-Ohio-2730, ¶ 10, quoting R.C. 2901.22(C).

{¶ 51} With regard to the first tier of the lesser included offense analysis, as to Count 1, this court has stated that reckless homicide is a lesser included offense of murder under Ohio law. *State v. Freeman*, 10th Dist. No. 07AP-337, 2007-Ohio-6859, ¶ 14.

{¶ 52} With regard to the second tier of the lesser included offense analysis as to Count 1, the evidence is such that the jury could not reasonably find against the state regarding the mens rea of purposely—the intent element of murder. Therefore, the jury could not reasonably find appellant not guilty of murder.

{¶ 53} Logan testified she believed Nicholson needed help, but appellant and Green kept telling her not to call for help because Nicholson was fine. Logan had her phone in her hand, but appellant grabbed her wrist and told her not to call for help because it was not "that big of a deal," they had "just got into it" and Nicholson was fine. (Tr. Vol. II at 369-70.) Appellant told Logan that he had "knocked [Nicholson] out four times." (Tr. Vol. II at 321.) When Logan asked appellant why, he stated because Nicholson "kept getting up." (Tr. Vol. II at 358.) Appellant told Logan that Nicholson was a "piece of shit [and Nicholson] shouldn't have put his hands on him." (Tr. Vol. II at 364-65.) Appellant told Logan that Nicholson was a bully, he would "mess with people" and he "deserved what he got." (Tr. Vol. II at 365.)

{¶ 54} Appellant was not injured during the fight. Appellant also demonstrated to Logan that before she arrived, he had put Nicholson's head in a puddle behind the bus stop

shelter.  Later, Logan testified appellant stated he put Nicholson's face in the puddle and tried to "drown the MF'er."  (Tr. Vol. II at 427.)  At one point, appellant put his knee on Nicholson and Logan heard Nicholson's head hit the glass enclosure.  She testified she did not think it was a good gesture.  Appellant and Thomas spent the night drinking and joking about the incident and appellant expressed no remorse that night.

{¶ 55} Logan testified she followed Nicholson's status while he was in the hospital. When asked if appellant expressed remorse, Logan stated "[y]es, sir, if you want to call it that, yes."  (Tr. Vol. II at 420.)  Logan explained she told appellant his idea of going to the hospital was "stupid" because "the extent of [Nicholson's] injuries and the way he laughed around with his friends, you can't go from one emotion to another."  (Tr. Vol. II at 422.) Logan continued, "[b]ecause he was joking about it and then all [of] a sudden [he] was all sympathetic, which that's not normal."  (Tr. Vol. II at 422-23.)  When asked if appellant was allowed to have different feelings at different times, Logan explained, "I'm just saying he was laughing -- they were laughing about the situation when he was laying there helpless and then all of a sudden when he knew that the problem had escalated and he could possibly get in trouble, that's when he felt --."  (Tr. Vol. II at 423.)

{¶ 56} The coroner testified that Nicholson was in a deep coma and had a severe traumatic brain injury.  He testified that if blood is swallowed and then a person vomits, the vomit could look to be dark red to black in color.  Nicholson's cause of death was multiple blunt force injuries to the head.

{¶ 57} Given this evidence, in particular based on appellant's conduct and the severity of Nicholson's injuries, the jury could not reasonably find against the state regarding the mens rea of purposely—that it was appellant's specific intention to cause a certain result, or, regardless of what appellant intended to accomplish thereby, it was his specific intention to engage in conduct of that nature.  Therefore, the jury could not reasonably find appellant not guilty of murder.

### 2. Lesser included offense analysis of Count 2

{¶ 58} The indictment charged appellant with felony murder, with the predicate offense of felonious assault, in Count 2.  With regard to Count 2, appellant requested the jury be instructed with the lesser included offense of involuntary manslaughter with the predicate offense being misdemeanor assault, or, in the alternative, felonious assault.

Appellant argued the instruction was appropriate on grounds that he caused Nicholson's death as a proximate result of him committing misdemeanor assault. He further argues he did not knowingly cause serious, or even fatal, injuries to Nicholson. R.C. 2903.02(B) defines felony murder, as follows:

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

As noted previously, the predicate offense charged in the indictment was felonious assault. A person commits felonious assault when one "knowingly" causes "serious physical harm to another." R.C. 2903.11(A)(1). Therefore, a person commits felony murder with a felonious assault predicate when he knowingly causes serious physical harm to another and that conduct is the proximate cause of another's death. *Owens* at ¶ 9. Under the felony murder provision, the mens rea for felony murder is the intent that is required to commit the underlying predicate offense, in this case, felonious assault—therefore, knowingly.

{¶ 59} Involuntary manslaughter is defined in division (A) of R.C. 2903.04 as relevant here as: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Involuntary manslaughter is defined in division (B) of R.C. 2903.04 as relevant here as: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree." The intent required to commit involuntary manslaughter is the intent assigned to the underlying offense. *State v. Losey*, 23 Ohio App.3d 93, 97 (10th Dist.1985).

{¶ 60} This court recognized that felony murder requires an additional element that involuntary manslaughter does not:

> Causing another's death as a proximate result of committing *any* felony, which is sufficient to prove involuntary manslaughter, is not always or necessarily sufficient to prove felony murder. In order to prove felony murder the State is required to prove more: that the underlying felony is an offense of violence, defined in R.C. 2901.01(A)(9), that is a felony of the first or second degree, and not a violation of R.C. 2903.03 or 2903.04.

> Proof of involuntary manslaughter is not sufficient to prove felony murder except in those particular cases where an additional requirement is met: the underlying felony is an offense of violence that is a felony of the first or second degree.

(Emphasis sic.) *State v. Ford*, 10th Dist. No. 07AP-803, 2008-Ohio-4373, ¶ 29, quoting *State v. Dixon*, 2d Dist. No. 18582 (Feb. 8, 2002), *abrogated on other grounds*.

{¶ 61} R.C. 2903.11(A) defines felonious assault as: "No person shall knowingly * * * (1) Cause serious physical harm to another." R.C. 2901.22(B) defines "knowingly" as: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2903.13(A) and (B) defines misdemeanor assault as: "No person shall knowingly cause or attempt to cause physical harm to another [and] [n]o person shall recklessly cause serious physical harm to another." R.C. 2901.22(C) defines "recklessly" as: "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

{¶ 62} "Serious physical harm" is defined as:

> [A]ny of the following:
>
> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶ 63} With regard to the first tier of the lesser included offense analysis, the Supreme Court has stated that involuntary manslaughter is a lesser included offense of felony murder. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 79.

{¶ 64} With regard to the second tier of the lesser included offense analysis, the evidence outlined above in our analysis of Count 1, murder, likewise reveals the jury could not reasonably find against the state regarding the mens rea of knowingly, the intent of felonious assault, which thus is the intent element of the felony murder charge. Further, the evidence reveals the jury could not reasonably find against the state regarding serious physical harm, the severity of harm required for felonious, rather than misdemeanor, assault. Therefore, the jury could not reasonably find appellant not guilty of felony murder.

{¶ 65} Thus, since the evidence does not support not guilty verdicts of the crimes charged, instructions on any lesser included offenses were not appropriate. The trial court did not err in failing to instruct the jury on the lesser included offenses of reckless homicide and involuntary manslaughter. Appellant's seventh assignment of error is overruled.

## F. First and Second Assignments of Error – Sufficiency and manifest weight of the evidence

{¶ 66} Last, we address appellant's first and second assignments of error. In his first and second assignments of error, appellant contends there is insufficient evidence supporting his guilty findings for murder and felony murder and that the findings are against the manifest weight of the evidence.

{¶ 67} Sufficiency of the evidence is a legal standard that tests whether the evidence is adequate to sustain a verdict as a matter of law. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11; *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law."

*Thompkins* at 386. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Jenks* at 260. "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18, citing *State v. Elqatto*, 10th Dist. No. 11AP-914, 2012-Ohio-4303, ¶ 20; *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 68} A challenge to the sufficiency of the evidence tests whether the evidence is adequate to sustain a verdict as a matter of law, and a challenge to the manifest weight of the evidence relates to persuasion and tests whether the greater amount of credible evidence supports the verdict. *Eastley* at ¶ 11-13; *Thompkins* at 387. The Supreme Court has stated:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 69} When presented with a challenge to the manifest weight of the evidence, an appellate court cannot simply substitute its view for that of the trier of fact, but, instead, must " 'review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Williams*, 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 24, quoting *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. This authority " ' "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." ' " *Id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In reviewing the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their

demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 70}  Appellant argues that "the evidence fails to show that [appellant] engaged in the fight in order to murder Nicholson [and that] [t]he evidence also fails to show that [appellant] knew that he was causing serious, even fatal, injury to Nicholson." (Appellant's Brief at 8.)  Thus, with regard to both the sufficiency and the manifest weight of the evidence, appellant challenges the elements of "purpose," "knowingly," and "serious physical harm."

{¶ 71} In our discussion of the seventh assignment of error, regarding lesser included offenses, we stated the statutory definitions of and summarized much of the evidence supporting the elements of "purpose," "knowingly," and "serious physical harm."

{¶ 72}  While viewing the evidence in a light most favorable to the prosecution, this evidence is sufficient for any rational trier of fact to have found the essential elements of "purpose," "knowingly," and "serious physical harm" proven beyond a reasonable doubt. Further, we find the jury did not lose its way on these elements and create such a manifest miscarriage of justice that the conviction for murder and felony murder must be reversed, and a new trial ordered.  Appellant's first and second assignments of error are overruled.

## IV. Conclusion

{¶ 73} For the foregoing reasons, appellant's seven assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, J., concurs.
NELSON, J., concurs in judgment only,
to affirm judgment of the Franklin County Court of Common Pleas.